**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **RODICA TRIFAN**, individually, and behalf of all others similarly situated, | |
| Plaintiff, | |
| v. | **Case No. 1:24-cv-07686** |
| **TURO INC.,** | |
| Defendant. | **Jury Trial Demanded** |

## CLASS ACTION COMPLAINT

Plaintiff RODICA TRIFAN ("Plaintiff"), individually, and on behalf of all others similarly situated, brings this Class Action Complaint against Defendant TURO INC. ("Defendant" or "Turo"), making the following allegations based on personal knowledge as to facts pertaining to her experiences and on information and belief as to all others:

### NATURE OF THE ACTION

1.      Defendant's terms of service require that disputes be resolved in an arbitration administered by either FairClaims or the American Arbitration Association ("AAA") pursuant to the FairClaims Rules or AAA's Consumer Arbitration Rules, as appropriate.

2.      In violation of the terms of service and the applicable Rules of Defendant's own chosen arbitration forums, when Plaintiff and Class members initiated arbitrations, Defendant systematically refused to engage in arbitration and refused to comply with its obligation to pay its share of the arbitration filing fee.

3.      As a result, Defendant deprived Plaintiff and Class members of their benefit of the bargain, wasted Plaintiff's and Class members' time and money, and effectively prevented them

from resolving disputes with Turo in the low cost and efficient process of consumer arbitration under the rules of either FairClaims or the AAA.

4.      Plaintiff and Class members seek all remedies available under the law for Defendant's violations of consumer protection laws and breach of contract, including declaratory and injunctive relief to require Defendant to answer Plaintiff's and Class members' claims and provide redress of their injuries.

## PARTIES

5.      Plaintiff is a natural person and citizen of Illinois.

6.      Defendant is a Delaware corporation with its principal place of business in San Francisco, California.

## JURISDICTION AND VENUE

7.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d), because the case is brought as a class action pursuant to Fed. R. Civ. P. 23, there are 100 or more members of the proposed Class, the amount in controversy exceeds $5,000,000, exclusive of costs, and Plaintiff and Defendant are diverse parties.

8.      This Court has personal jurisdiction over Defendant because the causes of action arise from Defendant's contracting with Illinois residents to supply goods and services in Illinois and from Defendant's committing of tortious acts within the state of Illinois causing injury to persons or property within Illinois.

9.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's and Class members' claims occurred in this District.

## COMMON FACTUAL ALLEGATIONS

10.     Defendant is an American peer-to-peer car sharing company based in San Francisco, California. The company offers a service and mobile app that allows private car owners to rent out their vehicles to consumers.[1]

11.     To book a car on Turo in the United States, a consumer is required to create a Turo account, be 18 years old or older, have a valid driver's license, and get approved to drive on Turo.[2] In most cases, consumers are approved immediately by entering some basic information, including but not limited to, their driver's license number.[3]

12.     In setting up an account, Defendant requires users to enter into an agreement with Defendant that includes Defendant's terms of service, located online at https://turo.com/us/en/policies/terms. The terms of service require that disputes between the parties be resolved in arbitration.

13.     The relevant portion of Turo's terms of service states:

**Dispute resolution**
**Dispute resolution for hosts and guests residing in the United States**
PLEASE READ THIS SECTION CAREFULLY. IT CONTAINS A MANDATORY ARBITRATION PROVISION AND THEREFORE AFFECTS YOUR RIGHTS AND GOVERNS HOW CLAIMS YOU AND TURO HAVE AGAINST EACH OTHER ARE RESOLVED.

* * *

**Agreement to Arbitrate.** The Parties each agree that any and all disputes, claims, or controversies that have arisen or may arise at any time between you and Turo (including its respective subsidiaries, employees, officers, directors, agents, third-party insurance brokers or products, and third-party claims administrators) and/or any other Turo user will be resolved by binding arbitration according to the procedure set forth below. For the purpose of this Agreement to Arbitrate, "disputes," "claims," and "controversies" shall have the broadest possible meaning that will be enforced and includes, any and all disputes and/or claims that arise out of or in any way relate to your relationship with Turo, including but not limited to:

---

[1] https://turo.com/us/en/about (last visited June 27, 2024)
[2] https://turo.com/ (last visited June 27, 2024)
[3] *Id*.

(1) your use of the Services, (2) the Agreement, these Terms and/or this Agreement to Arbitrate, including the interpretation, validity, enforceability, or scope of this Agreement to Arbitrate, or (3) your use of, or access to the Services, and anything sold, offered, or purchased through the Services (such as booking, listing, or sharing a vehicle). Through this Agreement to Arbitrate, and subject to the below exceptions, the Parties intend to arbitrate all disputes or claims regardless of whether they are based in contract, statute, regulation, ordinance, tort (including, but not limited to, fraud, misrepresentation, fraudulent inducement, or negligence), or any other legal or equitable theory and regardless of whether they arose or accrued before the Parties entered into this Agreement to Arbitrate. For avoidance of doubt, the Parties expressly agree that this Agreement to Arbitrate encompasses all disputes or claims pertaining to the validity, enforceability, or scope of this Agreement to Arbitrate and any such disputes or claims will be referred to binding arbitration and will be resolved by the arbitrator and not a court.

**Exceptions to Agreement to Arbitrate.** The only exceptions to this Agreement to Arbitrate are as follows:

- Disputes or claims that can be brought in small claims court
- Injunctive or equitable relief to prevent the actual or threatened infringement, misappropriation, or violation of a Party's copyrights, trademarks, trade secrets, patents, or other intellectual property rights. However, the Parties agree that any court proceedings shall be stayed pending the final resolution in arbitration of any arbitrable claims or issues
- Any cause of action or claim for relief which cannot be arbitrated as a matter of applicable statute or public policy. However, the Parties agree that any such court proceedings shall be stayed pending the final resolution in arbitration of any arbitrable claims or issues
- In the event California law is found to apply to this Agreement to Arbitrate, any remedy of public injunctive relief (i.e., injunctive relief that has the primary purpose and effect of prohibiting unlawful acts that threaten future injury to the general public). However, the Parties agree that any such court proceedings shall be stayed pending the final resolution in arbitration of arbitrable claims, causes of action, or issues.[4]

14.     Turo's terms of service also include a choice of law provision that states:

**Governing law**. The parties agree that the substantive laws of the state of Arizona apply to these Terms and the Agreement without regard to conflict of law provisions.[5]

---

[4] https://turo.com/us/en/policies/terms#dispute-resolution (last visited July 12, 2024)
[5] https://turo.com/us/en/policies/terms#governing-law (last visited July 21, 2024)

15.     According to the AAA Consumer Arbitration Rules Costs of Arbitration, "[i]n cases before a single arbitrator where the individual is the Claimant, a non-refundable** filing fee, capped in the amount of $225, is payable in full by the individual when a case is filed unless the parties' agreement provides that the individual pay less. A non-refundable filing fee in the amount of $375 is payable by the business once the individual claimant meets the filing requirements, unless the parties' agreement provides that the business pay more."[6]

16.     Defendant employs a systematic business practice of failing to comply with its obligations under its own adhesive arbitration clause contained in its terms of service.

17.     Consumers who seek to resolve their disputes with Defendant in accordance with the procedures Defendant sets forth in its arbitration provision are met with summary denials, indifference, and delay. Defendant fails and refuses to participate in consumer-initiated arbitration.

18.     Plaintiff and Class members attempted to resolve disputes and to pursue claims against Defendant in accordance with the arbitration clause in Defendant's terms of service, but were prevented from proceeding with the arbitration because of Defendant's failure to comply with its obligation to pay its portion of the required case initiation fee under the Consumer Arbitration Rules of the AAA.

19.     As a result of Defendant's unlawful conduct, Plaintiff and Class members suffered losses, including but not limited to: loss of funds from their accounts, lack of access to funds that rightfully belong to them, lost time and efforts associated with meeting the requirements to initiate an arbitration pursuant to the arbitration clause's terms, paying fees and costs for initiating an arbitration that was administratively closed, and paying more costly and additional fees to file claims in court in order obtain redress for injuries caused by Defendant.

---

[6] https://www.adr.org/sites/default/files/Consumer_Fee-Schedule.pdf Arbitration (as amended on January 1, 2023) (last visited June 27, 2024).

20.     Defendant systematically fails and refuses to pay AAA filing fees in accordance with the arbitration clause and the AAA Rules. After Defendant fails to participate in the arbitration, AAA is forced to administratively close the files, necessitating this lawsuit.

### PLAINTIFF'S DISPUTE WITH TURO

21.     Plaintiff first downloaded the Turo app in or around January 2022 to rent a vehicle as a guest.

22.     In June 2022, Plaintiff resumed use of the Turo app to rent her personal vehicle as a host to other guest users.

23.     On or about October 23, 2022, a Turo guest user, while operating Plaintiff's vehicle that was rented through Turo, was involved in a motor vehicle collision, which caused damage to the vehicle.

24.     Plaintiff claimed damage to the Vehicle's front bumper, a part underneath the bumper on the driver's side of the vehicle that was visibly dislocated, and the splash shield.

25.     Pursuant to Turo's terms of service,[7] Plaintiff filed a claim with Turo and provided documentation of the damage, including photographs and an inspection report through Snapsheet, a third-party software provider used by Turo to process claims.

26.     Shortly thereafter, Snapsheet provided Plaintiff with an estimate for repairs. The estimate failed to include all of the damage reported in violation of the protection plan purchased by Plaintiff.

27.     Snapsheet advised Plaintiff that Turo failed to provide all of the photos and documents that were previously submitted by Plaintiff. Snapsheet further requested that Plaintiff leave the rented vehicle in the mechanic's shop to obtain supplemental estimates for the repairs.

---

[7] See Specific Terms for Guests: Incident Reporting -
https://turo.com/us/en/policies/terms#specific-terms-for-guests (last visited Aug. 14, 2024).

28.     At that time, there was no guarantee that Turo would acknowledge and cover the vehicle damages in its entirety, and Plaintiff feared that she would be asked to pay for the repairs out of her own pocket.

29.     Plaintiff did not have the financial resources to leave the vehicle in the mechanic's shop indefinitely, so she opted to pay for the repairs and requested reimbursement from Turo.

30.     On or about January 6, 2023, Plaintiff sent a written Notice of Dispute to Turo by certified mail in an attempt to resolve the dispute. Defendant failed to respond to the Notice of Dispute.

31.     On or about March 16, 2023, Plaintiff filed an initial arbitration demand with the AAA. The file was later administratively closed for Plaintiff's failure to pay the initial filing fee of $225.00.

32.     On or about November 30, 2023, Plaintiff re-opened her AAA case and provided the initial filing fee of $225.00 to AAA. Defendant was given until December 13, 2023 to file a response. Additionally, Defendant was given until December 29, 2023 to comply with its obligation to pay its filing fee. *See* November 29, 2023 Letter from AAA, attached hereto as **Exhibit 1**.

33.     Defendant failed to respond to the arbitration demand. On March 13, 2024, AAA sent a letter to the parties notifying them that AAA administratively closed the file, stating that "[t]his letter acknowledges the above matter is closed due to non-payment. Therefore, on March 13, 2024, the American Arbitration Association (AAA) administratively closed this matter." *See* March 13, 2024 Letter from AAA, attached hereto as **Exhibit 2**.

34.     Because of Defendant's refusal to comply with its obligations to participate in arbitration, as alleged herein, Plaintiff and Class members suffered losses and were deprived of

their rights under the terms of service, which require mandatory arbitration of disputes with Defendant. Plaintiff and Class members suffered loss of funds, loss of availability of funds, time, effort, and expenses taken to initiate the arbitrations that were unable to proceed due to Defendant's breach of contract, plus the additional fees necessary to initiate a lawsuit against Defendant in court to obtain the requested relief.

## CLASS ALLEGATIONS

35.     **Class Definition**: Plaintiff brings this action pursuant to Rules 23(b)(2), 23(b)(3), and 23(c)(4) of the Federal Rules of Civil Procedure on behalf of the following Class:

> All persons in the United States whose arbitration with Defendant did not proceed as a result of Defendant's failure to pay the required arbitration filing fee.

36.     **ICFA Subclass Definition**: Plaintiff additionally seeks to represent a subclass defined as follows:

> All persons in Illinois whose arbitration with Defendant did not proceed as a result of Defendant's failure to pay the required arbitration filing fee.

37.     The following people are excluded from the Class and Subclass: (1) any Judge or Magistrate presiding over this action and members of their immediate families; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which Defendant or its parent have a controlling interest and its current or former officers and directors; (3) persons who properly execute and file a timely request for exclusions; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Defendant's counsel; and (6) the legal representatives, successors, and assigns of any such excluded persons.

38.     Plaintiff reserves the right under Federal Rule of Civil Procedure 23 to amend or modify the Class definition to include a broader scope, greater specificity, further division into

subclasses, or limitations to particular issues. Plaintiff reserves the right under Rule 23(b)(2) of the Federal Rules of Civil Procedure to seek injunctive relief to compel Defendant to pay its AAA arbitration fees. Plaintiff reserves the right under Federal Rule of Civil Procedure 23(c)(4) to seek certification of particular issues.

39. **Numerosity**: The exact number of Class and Subclass members is not available to Plaintiff. However, the number of isolated instances Plaintiff is aware of indicate that this is a common practice of Defendant and numerosity is satisfied. The exact number of class members can be readily identified by Defendant's records.

40. **Commonality**: Commonality requires that the Class and Subclass members' claims depend upon a common contention such that determination of its truth or falsity will resolve an issue that is central to the validity of each claim in one stroke. Here, there is a common contention for all Class members as to whether Defendant breached its standard terms of service agreement with Plaintiff and Class members.

41. **Typicality**: Plaintiff's claims are typical of the claims of other Class and Subclass members in that Plaintiff and the Class and Subclass members sustained damages arising out of Defendant's uniform wrongful conduct.

42. **Adequate Representation**: Plaintiff and Plaintiff's counsel will fairly and adequately represent and protect the interests of the Class and Subclass members. Plaintiff's claims are made in a representative capacity on behalf of the Class and Subclass members. Plaintiff has no interests antagonistic to the interests of the other Class and Subclass members. Plaintiff has retained competent counsel to prosecute the case on behalf of Plaintiff and the Class and Subclass. Plaintiff and Plaintiff's counsel are committed to vigorously prosecuting this action on behalf of the Class and Subclass members.

43.     **This case also satisfies Fed. R. Civ. P. 23(b)(2) - Policies Generally Applicable to the Class**: This class action is appropriate for certification because Defendant has acted or refused to act on grounds generally applicable to the Class as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the Class and Subclass members and making final injunctive relief appropriate with respect to the Class and Subclass as a whole. Defendant's practices challenged herein apply to and affect the Class and Subclass members uniformly, and Plaintiff's challenge to those practices hinge on Defendant's conduct with respect to the Class as a whole, not on facts or law applicable only to Plaintiff.

44.     The declaratory and injunctive relief sought in this case includes, but is not limited to: ordering Defendant to comply with its obligation to pay its AAA arbitration fees, and declaring that Defendant is obligated to pay its AAA arbitration filing fees in consumer arbitrations initiated by Plaintiff and Class and Subclass members.

45.     **This case also satisfies Fed. R. Civ. P. 23(b)(3) - Predominance**: There are many questions of law and fact common to the claims of Plaintiff and Class and Subclass members, and those questions predominate over any questions that may affect individual Class and Subclass members. Common questions and/or issues for Class and Subclass members include, but are not necessarily limited to the following:

      a.     Whether Defendant breached its standard agreements with Plaintiff and Class and Subclass members by failing to pay AAA filing fees;

      b.     Whether Defendant's conduct violated the Arizona Consumer Fraud Act ("ACFA"), A.R.S. § 44-1521, *et seq.*;

      c.     Whether Defendant's conduct violated the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 ILCS 505/1, *et seq.*;

      d.     Whether Plaintiff and Class and Subclass members are entitled to actual damages, restitution, disgorgement, and other remedies;

> e.    Whether injunctive and declaratory relief, and other equitable relief is warranted.

46.    **Superiority**: This case is also appropriate for class certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy as joinder of all parties is impracticable. The damages suffered by individual Class and Subclass members will likely be relatively small, especially given the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's actions. Thus, it would be virtually impossible for the individual Class and Subclass members to obtain effective relief from Defendant's misconduct. Even if Class members could mount such individual litigation, it would still not be preferable to a class action, because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single Court. Economies of time, effort and expense will be enhanced, and uniformity of decisions ensured.

47.    Particular issues under Rule 23(c)(4) are appropriate for certification because such claims present only particular, common issues, the resolution of which would advance the disposition of this matter and the parties' interests therein. Such particular issues include, but are not limited to:

> a.    Whether Defendant has a uniform agreement with Plaintiff and Class and Subclass members that requires arbitration of disputes;

> b.    Whether Defendant breached its agreement to arbitrate by failing to pay its arbitration filing fees; and

> c.    Whether Plaintiff and Class and Subclass members were injured as a result of Defendant's breaches.

## COUNT I
### Breach of Contract
### (Brought on behalf of Plaintiff and the Class)

48.     Plaintiff and Class members repeat and reallege paragraphs 1-48 as if fully set forth herein.

49.     Arizona law applies to this claim by Plaintiff and Class members against Defendant pursuant to the Arizona choice of law provision in Defendant's terms of service.

50.     The parties entered into an agreement that included the adhesive terms of service provided by Defendant, which required arbitration of disputes pursuant to the AAA Consumer Arbitration Rules. The Consumer Arbitration Rules provide that before an arbitration is administered, the business must pay its portion of the filing fee.

51.     All conditions precedent occurred or were performed by Plaintiff and Class members.

52.     Defendant breached the agreement by failing and refusing to pay filing fees as required under the Consumer Arbitration Rules incorporated into the parties' agreement of the terms of service.

53.     Plaintiff and Class members suffered injuries as a result of Defendant's breach of contract, including but not limited to: loss of funds, loss of availability of funds, loss of time and wasted efforts associated with meeting the requirements to initiate an arbitration pursuant to the arbitration clause's terms, paying fees and costs for initiating an arbitration that was administratively closed, and paying more costly and additional fees and costs to file claims in court in order obtain redress for injuries caused by Defendant.

## COUNT II
### Violations of the Arizona Consumer Fraud Act
### A.R.S. § 44-1521, *et seq*.
### (On behalf of Plaintiff and the Class)

54. Plaintiff and Class members repeat and reallege paragraphs 1-54 as if fully set forth herein.

55. Arizona law applies to this claim by Plaintiff and Class members against Defendant pursuant to the Arizona choice of law provision in Defendant's terms of service.

56. At all times relevant herein, there was in full force and effect the Arizona Consumer Fraud Act ("ACFA"), A.R.S. § 44-1521, *et seq*.

57. The ACFA prohibits the following deceptive, unlawful, unfair, and fraudulent acts or practices:

> The act, use or employment by any person of any deception, deceptive or unfair act or practice, fraud, false pretense, false promise, misrepresentation, or concealment, suppression or omission of any material fact with intent that others rely on such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise whether or not any person has in fact been misled, deceived or damaged thereby.

*See* A.R.S. § 44-1522(A)

58. Defendant is a "person" as defined by A.R.S. § 44-1521(6).

59. Based on the allegations above, *supra*, the Defendant advertised, offered, or sold goods in services in Arizona and engaged in trade or commerce directly or indirectly affecting the people of Arizona.

60. Based on the allegations above, *supra*, the Defendant engaged in unfair and/or deceptive acts by engaging in practices requiring Plaintiff and Class members to enter into agreements containing an arbitration provision which Defendant knowingly failed to follow by ignoring its responsibilities with the arbitration process.

61. Based on the allegations above, *supra*, Defendant intended that Plaintiff and Class members rely on its false promises and misrepresentations concerning the arbitration clause.

62.     Based on the allegations above, *supra*, Plaintiff and Class members relied on Defendant's false promises and misrepresentations to their detriment by engaging Defendant in the arbitration process and not being able to have their underlying issues with Defendant resolved in arbitration.

63.     The above-described deceptive and unfair acts and practices are part of Defendant's widespread and systematic pattern and/or practice.

64.     Defendant's business practices are unfair because they offend public policy, and they are immoral, unethical, oppressive, outrageous, unscrupulous, and substantially injurious. The injuries caused by this conduct and the harm to consumers outweigh the possible utility from these aforementioned practices.

65.     There is no benefit to consumers or competition by allowing Defendant to engage in these practices that damage the public.

66.     The gravity of the harm suffered by Plaintiff and Class members resulting from Defendant's conduct alleged herein outweighs any legitimate justification, motive, or reason for Defendant's conduct. Accordingly, Defendant's actions are immoral, unethical, and unscrupulous and offend the established public policies, and are substantially injurious to Plaintiff and Class members.

67.     As a result of the foregoing acts of Defendant, Plaintiff and Class members have been damaged in an amount to be determined at trial, and Plaintiff and Class members continued to be damaged due to Defendant's failure to following its own arbitration procedures.

68.     Based on the foregoing acts of the Defendant, a finding of punitive damages is warranted for Plaintiff and Class members. *See Thompson v. Better-Bilt Aluminum Prods. Co.*, 171

Ariz. 550, 556, 832 P.2d 203, 209 (1992) (quoting *Rawlings v. Apodaca*, 151 Ariz. 149, 162 (1986)).

## COUNT III
**Violations of the Illinois Consumer Fraud and Deceptive Business Practices Act**
**815 ILCS 505/1, *et seq*.**
**(On behalf of Plaintiff and the Subclass)**

69.     Plaintiff and Subclass members repeat and reallege paragraphs 1-54 as if fully set forth herein.

70.     The Illinois Consumer Fraud and Deceptive Businesses Practices Act ("ICFA") (815 ILCS 505/1, *et seq.*) prohibits any deceptive, unlawful, unfair, or fraudulent business acts or practices including using deception, fraud, false pretenses, false promises, false advertising, misrepresentation, or the concealment, suppression, or omission of any material fact, or the use or employment of any practice described in Section 2 of the Uniform Deceptive Trade Practices Act *See* 815 ILCS 505/2.

71.     The ICFA applies to Defendant's acts and omissions as described herein because it applies to transactions involving the sale of goods or services to consumers.

72.     Plaintiff, Subclass members, and Defendant are each a "person," as defined by 815 ILCS 505/1(c).

73.     Plaintiff and Subclass members are each a "consumer" as defined by 815 ILCS 505/1(e).

74.     Defendant is engaged in commerce as defined by 815 ILCS 505/1(f).

75.     Defendant's conduct herein constitutes unlawful and unfair business practices with respect to the transactions involving Plaintiff and Subclass members.  Specifically, the actions of Defendant arose out of its failure to comply with the mandatory provisions of both its arbitration

provisions in its contracts with the Plaintiff and Subclass members, as well as the mandatory provisions of the arbitration body (*i.e.*, American Arbitration Association) as set forth *supra*.

76.     Defendant's conduct, actions, and omissions described herein were likely to mislead and did in fact mislead Plaintiff and Subclass members, who were acting reasonably under the circumstances.

77.     Plaintiff and Subclass members were injured by Defendant's failure to comply with the arbitration procedures which caused Plaintiff and Subclass members to be deprived of the necessary forum to resolve their disputes with Defendant.

78.     The acts and omissions of Defendant have been unlawful in nature and, as a proximate result, Plaintiff and Subclass members are entitled to recover actual damages and punitive damages, as well as reasonable attorney's fees and court costs as provided by 815 ILCS 505/10a.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff RODICA TRIFAN, on behalf of herself and all others similarly situated, prays for a Court order:

A.     Certifying the Class and/or Subclass under Rule 23(b)(2) and 23(b)(3), or certifying issues under Rule 23(c)(4), appointing Plaintiff as the Class Representative, and Plaintiff's counsel as Class Counsel;

B.     Finding Defendant's conduct was unlawful, as alleged herein, and entering judgment in favor of Plaintiff and the Class on the claims asserted herein;

C.     Mandatorily enjoining Defendant to pay its arbitration fees;

D.     Entering a declaration that Defendant is obligated to pay its arbitration filing fees in consumer arbitrations initiated by Plaintiff and Class members;

16

E.      Awarding Plaintiff and Class members all other injunctive and equitable relief, including restitution and disgorgement, as allowed by law or equity;

F.      Awarding Plaintiff and Class members nominal, statutory, actual, compensatory, consequential, incidental, and enhanced damages, as well as restitution and disgorgement as allowed by law or equity;

G.      Awarding pre- and post-judgment interest;

H.      Awarding reasonable attorneys' fees, expenses, and costs; and

I.      Granting such other relief as the Court deems just and appropriate.

## JURY DEMAND

Plaintiff requests a trial by jury of all claims that can be so tried.

Plaintiff RODICA TRIFAN, individually, and on behalf of all others similarly situated,

By:    /s/Marc E. Dann
Marc E. Dann (OH #0039425)
Brian D. Flick (OH #0081605)
Marita I. Ramirez (*pro hac vice* anticipated)
**DANNLAW**
15000 Madison Avenue
Lakewood, Ohio 44107
Phone: (216) 373-0539
Facsimile: (216) 373-0536
notices@dannlaw.com

Thomas A. Zimmerman, Jr. (IL #6231944)
*tom@attorneyzim.com*
Sharon A. Harris
*sharon@attorneyzim.com*
Matthew C. De Re
*matt@attorneyzim.com*
Jeffrey D. Blake
*jeff@attorneyzim.com*
**ZIMMERMAN LAW OFFICES, P.C.**
77 W. Washington Street, Suite 1220
Chicago, Illinois 60602
(312) 440-0020 telephone

(312) 440-4180 facsimile
*firm@attorneyzim.com*

*Counsel for Plaintiff and the Class*